**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WAYNE ROGERS, *Plaintiff*, v. NED LAMONT, et al., *Defendants*. | : | Civil No. 3:21-cv-1722 (OAW) |

**INITIAL REVIEW ORDER**

Pro se Plaintiff, Wayne Rogers ("Mr. Rogers" or "Plaintiff"), has filed a complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants, Governor Lamont, Commissioner Quiros, Deputy Wardens Long and Doe, Captain Doe, District Administrator Rodriguez, Warden McCormick, Deputy Commissioner Rinaldi, and Lieutenant Harris, have violated his constitutional rights by taking inadequate measures to protect him from contracting the Covid-19 virus while he awaited trial in the Hartford Correctional Center ("HCC"). Because Plaintiff has failed to state any cognizable claims, the court **DISMISSES** his complaint.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to

'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to pro se litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co*., 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint,

however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: a pro se complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pleaded. *Id*.

## II. BACKGROUND

In September of 2021, in the midst of the Covid-19 pandemic, Plaintiff was a pretrial detainee at the Hartford Correctional Center ("HCC"). Complaint, ECF No. 1 at 4, ¶ 1. Plaintiff was housed in a dormitory with approximately 120 other inmates. *Id*. at ¶ 2.

During his confinement, Mr. Rogers wrote to Governor Lamont, Commissioner Quiros, Deputy Wardens Long and Doe, Captain Doe, and Warden McCormick about his concerns regarding HCC social distancing practices. *Id*. at ¶ 3. Of particular concern to Plaintiff was that: (1) inmates slept in double bunks, with bunks spaced just 16 inches apart from each other; (2) inmates were required to eat "elbow to elbow" without masks; and (3) HCC staff failed to wear masks. *Id.* at ¶ 4. Plaintiff also expressed concern with "dirty living conditions," and other unspecified, "less severe" issues. *Id.*

Governor Lamont never responded to Plaintiff's letter. *Id*. at 6, ¶ 19. The other Defendants responded by claiming that HCC was in compliance with social distancing

policy. *Id*. at 4, ¶ 4. Plaintiff asserts Defendants' responses "contradicted each other," but does not specify how, exactly, the responses were in conflict. *Id*. at 4, ¶ 5.

Dissatisfied with the result of his letters, Plaintiff filed administrative grievances. *Id.* Defendants (Plaintiff does not specify which ones) responded to these grievances by informing him that he could obtain a free Covid-19 vaccination. *Id*. at 5, ¶ 8.[1]

At the time Plaintiff filed his complaint, HCC inmates were tested for Covid-19 every 14 days. *Id*. at 4, ¶ 6. On October 13, 2021, Plaintiff tested negative. *Id*. at 4-5, ¶ 7. That same day, Plaintiff asked Lieutenant Harris why inmates "were forced to eat elbow to elbow," a policy seemingly at odds with what Plaintiff understood to be the Centers for Disease Control and Prevention's ("CDC") recommended practices. *Id.* at 5, ¶ 7. Lieutenant Harris responded that it wasn't possible to socially distance in a prison, and that Plaintiff was free to "order commissary," rather than to eat at the cafeteria. *Id.*

On October 14, 2021, Plaintiff was sent to a Restrictive Housing Unit ("RHU") for reasons unrelated to this case. *Id.* at ¶ 9. Plaintiff returned to general population on October 19, 2022. *Id.* at ¶ 11. Upon return, Plaintiff noticed a sign on the entrance door to his dormitory stating that the residence was on "lockdown" due to positive Covid-19 test results. *Id.* Plaintiff inquired about the sign and learned that 22 inmates in his dormitory had tested positive the day before. *Id.* at ¶ 12.

Confident that he could not have contracted Covid while housed in RHU, Plaintiff asked an unidentified HCC staff member why he had not been reassigned to a dormitory that was not currently on lockdown. *Id.* at 5-6, ¶ 13. The unidentified staff member

[1] Plaintiff does not state whether he has received a Covid vaccination.

responded to Plaintiff that this question was "above his pay grade," and advised Plaintiff to wear a mask. *Id.*

Upon returning to his dormitory, Plaintiff sent letters of concern to Commissioner Quiros, Deputy Wardens Long and Doe, Captain Doe, Warden McCormick, and Deputy Commissioner Rinaldi. *Id.* at 6, ¶ 14. Deputy Commissioner Rinaldi never responded to Plaintiff's letter. *Id*. at ¶ 19. The other Defendants responded with what Plaintiff viewed to be "contradicting" statements and reinformed Plaintiff about the availability of free Covid-19 vaccinations. *Id.*

On October 21, 2021, Plaintiff was tested for Covid-19. *Id.* at ¶ 15. Two days later, Plaintiff was notified that he had tested positive. *Id.* Plaintiff also notes that a Correctional Officer surnamed Rogers tested positive for Covid on or about October 18, 2021. *Id.* at ¶ 16. Plaintiff contends that Officer Rogers's positive test result demonstrates that "Plaintiff was not in contact until after his release from RHU." *Id.*[2]

Because of his positive Covid-19 test result, Plaintiff was "forced to miss important court dates." *Id.* at 17.[3] Plaintiff further contends that the Department of Correction ("DOC") cancels court dates "with no notification." *Id.* Additionally, Plaintiff alleges that he misssed religious services and recreational opportunities due to his positive test result. *Id.* at ¶ 18. In addition, Plaintiff felt "extremely ill" while he had Covid-19. *Id.*

When Plaintiff questioned Commissioner Quiros, Deputy Wardens Long and Doe, Captain Doe, and Warden McCormick about how he contracted Covid-19, these

[2] The court does not follow Plaintiff's logic. Plaintiff may be intending to imply that he contracted Covid from Officer Rogers following his release from RHU.

[3] Plaintiff does not clearly convey whether his hearings were held without him, whether there was an option for him to appear remotely, whether he had counsel, whether any such counsel was the individual to request a continuance or cancellation of any court date, and whether his court dates in fact were rescheduled for a date when he could appear in person.

Defendants declined to provide answers, and, instead, stated that they had followed CDC guidelines. *Id.* at 6-7, ¶ 20. The Defendants also reemphasized that Covid vaccinations were free. *Id.* District Administrator Rodriguez simply responded to Plaintiff's inquiries by agreeing with the responses provided by other Defendants. *Id.* at 7, ¶ 21.

Plaintiff contends that Defendants negligently failed to protect him from contracting Covid-19, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and violated his Sixth Amendment rights by failing to "produce [him] for court" while he had Covid-19. *Id.* at 7, ¶¶ 1-2. To remedy the alleged violations of his constitutional rights, Plaintiff seeks monetary damages and an order requiring the DOC to follow CDC guidelines, properly space bunks, refrain from using double bunks, better clean the HCC facility, better enforce the mask policy for HCC staff, and "actually answer" administrative grievances. *Id.* at 7-8, ¶¶ 1-3. Plaintiff also requests "proper medical care" for his Covid-19 condition. *Id.* at 8, ¶ 4.

## III. <u>DISCUSSION</u>

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally-protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). In his complaint, Plaintiff asserts that the defendants negligently failed to protect him from contracting Covid-19, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. ECF No. 1 at 7, ¶ 1. In addition, Plaintiff asserts a violation of his Sixth Amendment rights relating to missed court dates from his Covid-19 status. *Id.* at ¶ 2. Liberally construing his complaint, Plaintiff also may intend to bring a due process

challenge related to the allegedly inadequate response he received to his administrative grievances. *Id.* at 7-8, ¶ 1.

A. Deliberate Indifference Claims

Plaintiff asserts that the Defendants' collective lack of care and negligence constituted "deliberate indifference to health and safety" and caused him to contract Covid-19. *Id.* at 7, ¶¶ 1, 3-4. It is well-established that "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment, because 'pretrial detainees have not been convicted of a crime and thus may not be punished in any manner — neither cruelly and unusually nor otherwise.'" *Brown v. Harrington*, 2019 WL 135654 at *2 (D. Conn. Jan. 7, 2019) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

As a prerequisite for any § 1983 claim, a plaintiff must allege facts showing a defendant's personal involvement in an alleged violation of federally-protected rights. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2020) ("[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)). If personal involvement is established, a Fourteenth Amendment deliberate indifference claim also requires consideration of the objective severity of risk posed to the detained plaintiff and the *mens rea* of the defendant-official. *See Darnell*, 849 F.3d at 30, 35.

i. *Personal Involvement*

Plaintiff seeks to hold Governor Lamont, Commissioner Quiros, Captain Doe, District Administrator Rodriguez, and Deputy Commissioner Rinaldi liable for a violation

of his due process rights based solely on their alleged failure to adequately respond to his complaint letters and/or administrative grievances. However, "conclusory claims that a supervisor did not respond to letters or grievances, or that a supervisory official referred a letter to subordinates is insufficient to establish personal involvement." *Young v. Fischer*, 2017 WL 9509992 at *9 (N.D.N.Y. Mar. 6, 2017). Therefore, because Plaintiff has failed to provide any factual details related to their personal involvement in the decision to place Plaintiff in circumstances causing him to contract Covid-19, the Fourteenth Amendment claims against these supervisory defendants are **DISMISSED.**

Plaintiff asserts that Lieutenant Harris is liable based on his oral response to Plaintiff's inquiry regarding why inmates were required to eat "elbow to elbow" in the HCC cafeteria. ECF No. 1 at 4-5, ¶ 7. The complaint does not, however, suggest that Lieutenant Harris had authority to set HCC's social distancing protocols. Therefore, Plaintiff also inadequately has alleged Lieutenant Harris' personal involvement in the asserted violations of Plaintiff's rights. *See Walker v. Martuscello*, 2021 WL 3173871 at *13 (N.D.N.Y. 2021) (recognizing that Chaplain lacked authority to authorize religious services and had no personal involvement in alleged violation of Plaintiff's First Amendment rights).

In contrast to the previously-discussed defendants, Warden McCormick and Deputy Wardens Long and Doe directly oversee HCC facility operations. ECF No. 1 at 2-3, ¶¶ 3-4, 7.[4] It is fair to infer that these defendants—by virtue of their respective roles as HCC's Warden or Deputy Warden—had direct involvement in effectuating, or

[4] Plaintiff asserts that Defendant Long was the "acting" HCC warden, while Defendant McCormick was the official HCC warden. ECF No. 1 at 2-3, ¶¶ 3, 7. For initial screening purposes, the court presumes that Warden McCormick maintained involvement the day-to-day management of HCC, notwithstanding the fact that Deputy Warden Long was serving as the acting warden.

maintaining most of the conditions of confinement to which Plaintiff objects. Thus, Plaintiff has alleged sufficient personal involvement to proceed with due process claims against these three Defendants. *See Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (holding that Plaintiff may demonstrate "personal involvement" through a defendant's "creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue.")

While Plaintiff has alleged facts sufficient to establish Warden McCormick's and Deputy Wardens Long and Doe's personal involvement in creating or perpetuating persistent conditions of confinement applicable to all inmates, he has not alleged facts showing that these Defendants also were involved in the decision to readmit him to a dormitory that was on Covid-19 lockdown, following his brief stint in RHU. In his complaint, Plaintiff notes that he asked an unnamed officer why he was being readmitted to his dormitory, and was told, simply, that the question was "above the officer's pay grade." ECF No. 1 at 5-6, ¶ 13. In the absence of any other information, it is not clear exactly who decided to readmit Plaintiff to a dormitory that was on Covid-19 lockdown. Therefore, even assuming that his readmission offended due process, Plaintiff has failed to allege facts showing that any of the named defendants personally were involved in the violation of his constitutional rights. *See Young v. McClendon*, 2022 WL 4386908 at *4 (D. Conn. Sept. 22, 2022) (recognizing that a plaintiff bringing a conditions of confinement claim against a warden, "must allege facts showing that [the] Warden [] knew about and disregarded an excessive risk to his health").

ii. *Severity of Risk*

To establish that conditions of pre-trial confinement violate the Fourteenth Amendment, an "inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30 (quotation marks and citation omitted). Relevant to this showing, "correctional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Thus, living conditions that unreasonably expose an inmate to Covid-19 may constitute an objective deprivation sufficient to support a constitutional cause of action. *See Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 439-40 (D. Conn May 12, 2020).

Here, in the context of the dangers presented by the Covid-19 pandemic, Plaintiff takes issue with the following persistent conditions of confinement:

- Inadequate social distancing in dormitory sleeping quarters;
- Inadequate social distancing in the cafeteria;
- Failure of staff to wear masks; and
- "Dirty" living conditions.

The court will presume that Plaintiff's allegations of inadequate social distancing practices (in HCC's sleeping quarters and cafeteria) were sufficiently serious during the time of the events in question to support a Fourteenth Amendment cause of action.

For two reasons, Plaintiff's passing complaint that HCC staff failed to wear masks is too vague to state a cause of action. First, an HCC staff member's occasional failure to wear a mask is not attributable to a supervising authority. *See Tangreti*, 983 F.3d at 618 (holding that a § 1983 violation "must be established against the supervisory official directly"). Second, when Plaintiff filed his complaint, the CDC only recommended

masking when it was not possible to engage in social distancing. *See Chun v. Edge*, 465 F. Supp. 3d 168, 187-88 (E.D.N.Y. June 9, 2020). An alleged a due process claim against Defendants McCormick, Long, and Doe, premised on the failure of HCC staff to wear masks would require facts demonstrating a widespread disregard of masking policy, and Defendants' awareness of such disregard. *See Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) ("[L]apses in enforcement" of social-distancing policies during the Covid-19 pandemic "do little to establish that the defendants were deliberately indifferent," absent evidence that prison officials were "ignoring or approving the alleged lapses").

Plaintiff's brief complaint about "dirty" living conditions is also too vague to state a claim. Given the nature of his other complaints, the court presumes that Plaintiff intends to allege that the HCC facility inadequately was disinfected to protect against the spread of Covid-19. Regardless, pretrial detainees do not have a right to spotlessly clean housing, and merely describing a facility as "dirty" does not state a constitutional cause of action. *See Petway v. City of New York*, 2012 WL 2254246 at *7 (E.D.N.Y. June 14, 2012).

iii. *Mens Rea*

The second element of a Fourteenth Amendment deliberative indifference claim focuses on the *mens rea* of the defendant. *Rogers v. Lamont*, 2022 WL 3716446 at *3 (August 29, 2022) (citing *Darnell*, 849 F.3d at 35). In contrast to an Eighth Amendment cause of action though, a Fourteenth Amendment deliberate indifference claim does not require proof that a defendant was subjectively aware of the harm associated with a challenged condition. *Darnell*, 849 F.3d at 35. In order to state such a Fourteenth Amendment claim "the pretrial detainee must prove that the defendant-official acted

intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Consequently, "the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.*

The court recognizes the logistical difficulties in maintaining ideal social distancing practices within a prison; a facility designed to house numerous inmates in close quarters. *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020) ("We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by 'doing their best.'"). The Constitution is not offended by the best efforts of correctional authorities to implement effective, yet practical, social distancing strategies. *See Fernandez-Rodriguez v. Licon-Vitale,* 470 F. Supp. 3d 323, 354 (S.D.N.Y. July 2, 2020). An inmate's "mere disagreement" with implemented social distancing practices will not suffice to establish deliberate indifference. *Id.*

Here, Plaintiff has alleged suboptimal social distancing practices. However, the court finds that the social distancing practices Plaintiff perceived to be deficient were unavoidable in a prison facility (as to the inmates and to the correctional officers and staff). Indeed, the CDC guidance which Plaintiff faults the Defendants for disregarding "presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings," as ideal social distancing will not be "feasible in all facilities." *Swain*, 961 F.3d at 1288. Significantly, Plaintiff does not allege that HCC has space to single bunk inmates six feet apart from each other. Nor does he allege that

HCC's cafeteria has the space needed to place significant distance between inmates during their meals. To the contrary, Plaintiff attributes a quote to an HCC officer indicating that such social distancing would have been impossible. ECF No. 1 at 4-5, ¶ 7. Further, Plaintiff alleges that the Defendants persistently informed him that he could receive a free Covid vaccination. ECF No. 1, 5-7 ¶¶ 8, 14, 20. Given the impossibility of ideal social distancing conditions, vaccination represented another alternative for Plaintiff to protect himself from serious Covid-19 illness. Plaintiff has not alleged facts showing that Defendants were intentionally or recklessly indifferent to this health and safety, sufficient to support a Fourteenth Amendment conditions of confinement claim. Therefore, any such claim hereby is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

B. Fourth Amendment Claims

Plaintiff's complaint alleges that the defendants violated his Fourth Amendment rights by taking inadequate measures to protect him from contracting Covid-19. However, the Fourth Amendment protects against unreasonable governmental searches and seizures. U.S. Const. amend. IV. Because Plaintiff's complaint does not contest the propriety of a search, seizure, or any other kind of intrusion upon privacy, Plaintiff has not pled cognizable Fourth Amendment claims. Accordingly, those claims hereby are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

C. Sixth Amendment Claims

Plaintiff contends that the defendants who were DOC officers or officials violated his Sixth Amendment rights by "failing to produce Plaintiff for court" when he had Covid-19. ECF No. 1 at 7, ¶ 3. The Sixth Amendment to the U.S. Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state

> and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Plaintiff does not explain in detail his theory of Sixth Amendment liability. The court, however, construes his complaint to assert a violation of Plaintiff's Sixth Amendment right to be present during any critical stage of his criminal prosecution. *See U.S. v. Gagnon*, 470 U.S. 522, 526 (1985).

Chief among the deficiencies in Plaintiff's Sixth Amendment claim is the fact that he is suing DOC officials and officers who do not themselves decide whether a criminal hearing will be rescheduled or conducted outside of a criminal defendant's presence. Judges make these decisions. To be sure, a judge's decision-making is likely to be informed by a notification from DOC that a criminal defendant has Covid-19. However, state judges in Connecticut control their own dockets. *See West Haven Lumber Co. v. Sentry Const. Corp.*, 117 Conn. App. 465, 469 (2009) ("The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interferences with the fair administration of justice." (citation omitted)). Therefore, even assuming that Plaintiff was unable to physically attend a critical hearing in a criminal case, any constitutional error would not be attributable to the defendant prison officials.

Also problematic to his claim is the fact that Plaintiff does not clarify whether his court appearances were rescheduled, cancelled, or held outside of his presence. He also fails to state whether he was presented with an option to appear remotely. Accordingly,

the court cannot discern how the mere rescheduling of a court date implicates Plaintiff's Sixth Amendment rights.

Finally, Plaintiff's apparent contention that he should have been transported to a public courthouse while he had Covid-19 is, at best, difficult to reconcile with his deliberate indifference claim. Plaintiff cannot plausibly fault DOC officials for failing to protect him from Covid-19, while simultaneously arguing that they should have transported him to a public proceeding (likely while confined in a vehicle with other inmates headed to court, and while in the custody of state employees, while he, himself, was infected).

In sum, Plaintiff has not pled cognizable Sixth Amendment claims. Accordingly, those claims are now **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

D. Administrative Grievance Claims

Plaintiff's complaint names grievance administrators as parties to this action and requests an injunction ordering Defendants to "actually answer" his grievances. ECF No. 1 at 7-8. This allegation suggests that Plaintiff may wish to bring due process claims related to allegedly inadequate responses to his HCC grievance filings.

"The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." *Meachum v. Fano*, 427 U.S. 215, 223 (1976). Thus, the initial inquiry in evaluating Plaintiff's possible due process claim is to determine whether he had a constitutionally-recognized liberty interest in the proper administration of HCC's administrative grievance system.

The Second Circuit has held that neither state directives nor "state statutes ... create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). On the basis of this

holding, courts within the Second Circuit consistently have held that inmates have no liberty interest in the right to proper application of, or authorization to participate in, a correctional facility's administrative grievance process. *See e.g.*, *Riddick v. Semple*, 731 Fed. Appx. 11, 13 (2d Cir. 2018); *Baltas v. Erfe*, 2020 WL 1915017 at *33 (D. Conn. April 20, 2020). Thus, Plaintiff has not pled viable claims related to the allegedly improper adjudication of his administrative grievances. To the extent Plaintiff intended to raise such claims, they hereby are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

The court enters the following orders:

(1) Plaintiff's complaint, and all claims therein raised are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

(2) If Plaintiff believes there are additional facts that he can allege which will overcome any of the deficiencies identified in this ruling, then he may file a proposed amended complaint within 30 days of this Order.

(3) If Plaintiff fails to file a proposed amended complaint within that time period, the court may dismiss his claims with prejudice and order that the Clerk of Court close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 10th day of November, 2022.

/s/
Omar A. Williams
United States District Judge